# United States Court of Appeals
## For the First Circuit

No. 20-1800

MICHAEL FINAMORE,

Plaintiff, Appellant,

v.

LT. NICK L. MIGLIONICO, in his individual and official capacity,
ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. David H. Hennessy, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Bart W. Heemskerk and Heemskerk Business Litigation PLLC on
brief for appellant.
Gerard T. Donnelly, Matthew G. Lindberg, and Hassett &
Donnelly, P.C. on brief for appellees.

September 28, 2021

**SELYA**, **Circuit Judge**.    Plaintiff-appellant Michael Finamore, convinced that the town of Douglas, Massachusetts (the Town), was infringing upon his property rights by allowing the public to traverse a public way that cut through his property, tried to enforce his perceived rights through self-help. A ruckus ensued, and police officers arrested the appellant for disturbing the peace and disorderly conduct. After the criminal charges were dismissed, the appellant sued a number of municipal actors (including the police officers). The district court entered summary judgment for the defendants, and the appellant assigns error. Concluding that the entry of summary judgment was appropriate, we affirm.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case. The appellant owns real estate (the Property), located in the Town. Part of Cedar Street, which has been used as a public way for many years, cuts through the Property. After commissioning a survey, the appellant came to believe that the portion of Cedar Street that crossed the Property belonged to him. Consequently, he sought to rescind public access across it.

The Town was unpersuaded. It continued to maintain that the disputed portion of the street was a public way. Litigation followed, and the state superior court found in favor of the Town and declared all of Cedar Street to be a public way. On appeal,

though, the judgment was vacated and a new trial ordered. See Hunter v. Town of Douglas, No. 14-1531, 2015 WL 4494670, at *2 (Mass. App. Ct. July 24, 2015). The appellant claims — albeit without elaboration — that he thought the appeals court decision meant that he could rescind public access through the disputed section of Cedar Street pending the new trial.

On October 13, 2015, three members of the Town's police force — Lt. Nick Miglionico, Officer Anthony Yannino, and Officer Mark Kaminski (collectively, the Officers) — responded to a report that the appellant had unilaterally closed off the street. By the time the Officers arrived on the scene, the appellant had stretched an orange plastic snowfence across the northernmost boundary of the disputed portion of Cedar Street and was about to erect a similar barrier across the southernmost boundary. Two other Town hierarchs, Town Administrator Mike Guzinski and Highway Superintendent John Furno (collectively, the Municipal Officials), also came to the scene. Lt. Miglionico told the appellant to remove the fence and warned him that he would be arrested if he did not do so. The appellant refused, stating that he would rather go to jail.

In the meantime, a crowd had gathered, people were yelling and screaming, and the appellant was bombarded with demands to open the street. After conferring with the Municipal Officials and confirming that the appellant did not have the authority to

close Cedar Street, Lt. Miglionico again ordered the appellant to remove the fence. When the appellant still balked, Lt. Miglionico arrested him and directed Highway Superintendent Furno to take down the fence.

The Officers transported the appellant to the police station, booked him on charges of disturbing the peace and disorderly conduct, and forced him to surrender his personal items (including his prescription medication). Although the appellant was detained in a holding cell for nearly five hours, he claims to have no memory of anything past the first fifteen minutes. The appellant asserts that this memory loss was due to a cardiac event, which he says resulted in a loss of consciousness. There is no evidence in the record, though, of any contemporaneous medical treatment.

Officer Yannino filed a criminal complaint against the appellant for disturbing the peace and disorderly conduct. See Mass. Gen. Laws ch. 272, § 53(b). The state district court made a finding of probable cause, but the charges were ultimately dropped — one was dismissed and the other nolle prossed.

That was not the end of the matter. The appellant later repaired to the United States District Court for the District of Massachusetts and sued the Officers and the Municipal Officials. Invoking 42 U.S.C. § 1983 and the district court's supplemental jurisdiction, see 28 U.S.C. § 1367, he brought a total of nine

claims.  The parties agreed to proceed before a magistrate judge.  See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b).  Following pretrial discovery, the district court granted summary judgment in favor of all defendants on all counts.  See Finamore v. Miglionico, No. 17-40122, 2020 WL 5100763, at *1 (D. Mass. June 24, 2020).  This timely appeal ensued.

## II. ANALYSIS

Before us, the appellant challenges the entry of summary judgment on six of the original nine claims.  The six claims are a false arrest claim under section 1983 and the Fourth Amendment; a claim under the Massachusetts Civil Rights Act (MCRA), see Mass. Gen. Laws ch. 12, § 11I, for false arrest; a combined common-law claim for false arrest and false imprisonment; a common-law claim for malicious prosecution; a common-law claim for civil conspiracy; and a common-law claim for intentional infliction of emotional distress.

We review de novo the district court's entry of summary judgment.  See Shurtleff v. City of Boston, 986 F.3d 78, 85 (1st Cir. 2021).  In conducting that review, we take the record in the light most flattering to the nonmovant (here, the appellant) and draw all reasonable inferences to his behoof.  See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).  But this plaintiff-friendly approach has well-defined limits:  one such limitation dictates that "motions for summary

judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

When all is said and done, "[s]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Arabian Support & Servs. Co. v. Textron Sys. Corp., 943 F.3d 42, 47 (1st Cir. 2019). For this purpose, a genuine issue exists if "a reasonable jury could resolve the point in favor of the nonmoving party." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). By the same token, a fact is material only if "it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996).

## A. **Section 1983 and MCRA Claims**.

We begin with the appellant's counterpart claims under section 1983 and the MCRA. "The two essential elements of an action under [section 1983] are . . . (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Chongris v. Bd. of

- 6 -

Appeals of Andover, 811 F.2d 36, 40 (1st Cir. 1987). As the appellant's section 1983 claim is premised upon an alleged violation of the Fourth Amendment — an allegation that the Officers wrongfully arrested him — the appellant must show that the Officers lacked probable cause to effect the arrest. See Roche, 81 F.3d at 254; see also Mann v. Cannon, 731 F.2d 54, 62 (1st Cir. 1984) ("To prove a section 1983 false arrest claim, . . . [the appellant] must show at minimum that the arresting officers acted without probable cause.").

A similar set of requirements underpins the appellant's statutory state-law claim. Under the MCRA, see Mass. Gen. Laws ch. 12, § 11I, the appellant must show that "his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth" was either "interfered with, or attempted to be interfered with" through "threats, intimidation or coercion." Bally v. Northeastern Univ., 532 N.E.2d 49, 51-52 (Mass. 1989) (quoting Mass. Gen. Laws ch. 12, § 11H); see Meuser v. Federal Express Corp., 564 F.3d 507, 516 (1st Cir. 2009). Because the appellant premises his MCRA claim on an allegation of false arrest, he must establish that the Officers lacked probable cause to arrest him in order to prevail on that claim. See Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989).

As the absence of probable cause represents the sine qua non of the appellant's claims under both section 1983 and the MCRA,

- 7 -

we start — and end — with that element, turning directly to the issue of whether the Officers acted with probable cause when they arrested the appellant for disturbing the peace and disorderly conduct. In the context of warrantless arrests, the standard for probable cause is coextensive under federal and Massachusetts law. See id.; Coblyn v. Kennedy's, Inc., 268 N.E.2d 860, 863 (Mass. 1971). The existence vel non of probable cause "depends . . . upon whether, at the moment the arrest was made, . . . the facts and circumstances within [the Officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [appellant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); see United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987). "The preferred approach" to an inquiry into the existence of probable cause "is pragmatic; it focuses on the 'factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act.'" Roche, 81 F.3d at 254 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). The applicable standard "does not require the [O]fficers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exist[ed] need only be reasonable." United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999); see Commonwealth v. Ilya I., 24 N.E.3d 1048, 1052 (Mass. 2015).

In the case at hand, the Officers arrested the appellant for two different crimes: disturbing the peace and disorderly conduct. Although a finding of probable cause for just one of the two crimes would render the appellant's arrest lawful, see United States v. Bizier, 111 F.3d 214, 218 (1st Cir. 1997), we review the probable-cause finding as to each offense.

In Massachusetts, whether a person committed the crime of disturbing the peace is evaluated under a bifurcated approach. See Commonwealth v. Orlando, 359 N.E.2d 310, 312 (Mass. 1977). That approach "proscribes activities which, first, most people would find to be unreasonably disruptive, and second, did in fact infringe someone's right to be undisturbed." Id. Here, the record makes manifest that the appellant unilaterally cordoned off a portion of Cedar Street with a plastic fence, wholly obstructing the flow of traffic along a public way. The fence plainly disturbed the public's right to pass along Cedar Street. And we need look no further than the boisterous gathering of local residents at the fence, provoked by the appellant's intransigence, to discern that many people found the appellant's makeshift blockade unreasonably disruptive. Taken together with the Officers' contemporaneous discovery that the appellant was responsible for erecting the fence, these circumstances provided an ample basis for the Officers reasonably to conclude that the appellant had disturbed the peace.

In an effort to blunt the force of this reasoning, the appellant argues that the Officers simply could have instructed the Municipal Officials to remove the fence without placing the appellant under arrest. For that reason, the appellant says, his arrest was unnecessary, and the lack of necessity raises a genuine issue of material fact concerning the validity of the arrest. This argument lacks force. When probable cause for an arrest exists, the arresting officer need not balance the "costs and benefits" of making the arrest or determine that the arrest is "in some sense necessary." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). As the Officers had probable cause to believe that the appellant committed "even a very minor criminal offense" in their presence, they could place the appellant under arrest for that offense without transgressing the Fourth Amendment. Id.

The appellant's arrest for disorderly conduct was also appropriate. In Massachusetts, an individual commits the crime of disorderly conduct when he, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, . . . creates a hazardous or physically offensive condition by any [non-expressive conduct] which serves no legitimate purpose of the actor." Iacobucci v. Boulter, 193 F.3d 14, 23 (1st Cir. 1999) (quoting Alegata v. Commonwealth, 231 N.E.2d 201, 211 (Mass. 1967)); see Commonwealth v. A Juvenile, 334 N.E.2d 617, 627-28 (Mass. 1975). The appellant's blockade created just

such a hazardous condition. The record shows, beyond hope of contradiction, that the appellant placed plastic fencing across a particularly dangerous portion of Cedar Street (a locus at which several prior accidents had occurred). Even the appellant agreed (in his deposition testimony) that his blockade "[a]bsolutely" posed a traffic hazard. Viewed together with the appellant's adamant refusal to remove the fence when twice directed to do so, these circumstances provided a sufficient basis for the Officers reasonably to conclude that the appellant had recklessly created a risk to the public by putting the blockade into place.

Nor does the record support the appellant's argument that his placement of the blockade served a legitimate purpose. Even if the appellant subjectively believed that the ongoing litigation over the disputed portion of Cedar Street gave him the right to erect the barrier, the Appeals Court's decision preserving the status quo dictates — as an objective matter — that he did not. See Hunter, 2015 WL 4494670, at *1-2 (vacating judgment declaring Cedar Street a public way and remanding to Superior Court for new trial, but not declaring the appellant the rightful owner of the disputed portion of the street). Aware of the ongoing litigation, the Officers conferred with the Municipal Officials prior to the arrest and confirmed that the appellant had no authority to cordon off the disputed portion of Cedar Street. As a general matter, government officials involved in an

investigation are presumed to be reliable sources of credible information for the purpose of developing probable cause. See Commonwealth v. Zorn, 846 N.E.2d 423, 430 (Mass. App. Ct. 2006) (citing United States v. Ventresca, 380 U.S. 102, 111 (1965)). It follows that, on the facts available to them at the time, the Officers reasonably could have believed — when they placed the appellant under arrest — that the appellant lacked a legitimate purpose for cordoning off Cedar Street.

To say more would be to paint the lily. Viewing the record in the light most hospitable to the appellant, we discern no genuine issue as to any material fact concerning the existence of probable cause. We hold, therefore, that the Officers had probable cause to arrest the appellant for disturbing the peace and disorderly conduct. Consequently, the district court did not err in entering summary judgment against the appellant with respect to his claims under section 1983 and the MCRA.

### B. **False Arrest and False Imprisonment Claim**.

Next, we turn to the appellant's combined common-law claim for false arrest and false imprisonment. The two torts are joined at the hip because, in Massachusetts, "[f]alse arrest is a species of the tort of false imprisonment." Nuon v. City of Lowell, 768 F. Supp. 2d 323, 336 (D. Mass. 2011) (citing Wallace v. Kato, 549 U.S. 384, 391 (2007)). To be liable for false imprisonment, an individual must be shown, inter alia, to have

unlawfully confined a person, either directly or indirectly.  See Walker v. Femino, 311 F. Supp. 3d 441, 455 (D. Mass. 2018); see also Noel v. Town of Plymouth, 895 F. Supp. 346, 354 (D. Mass. 1995).  Ordinarily, a police officer may be held liable for false imprisonment "'unless the . . . officer had a legal justification' for the restraint."  Barbosa v. Conlon, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (quoting Sietins v. Joseph, 238 F. Supp. 2d 366, 381 (D. Mass. 2003)).  "Such justification exists if the officer had probable cause to arrest the suspect."  Sietins, 238 F. Supp. 2d at 381.  So, too, the existence of probable cause to arrest vitiates a standalone false arrest claim.  See Cabot v. Lewis, 241 F. Supp. 3d 239, 259 (D. Mass. 2017).

Viewed against this backdrop, the appellant's combined common-law claim for false arrest and false imprisonment need not detain us.  Here, the Officers had probable cause to arrest the appellant for both disturbing the peace and disorderly conduct. See supra Part II(A).  It follows inexorably — as night follows day — that the Officers were legally justified in placing the appellant under arrest and confining him while they prepared a criminal complaint.  See Cabot, 241 F. Supp. 3d at 259; Sietins, 238 F. Supp. 2d at 381.  The district court, therefore, did not err in granting summary judgment on the appellant's combined common-law claim for false arrest and false imprisonment.

### C.  **Malicious Prosecution Claim**.

This brings us to the appellant's common-law claim for malicious prosecution against the Officers.  "To prevail on a malicious prosecution claim under Massachusetts law, [the appellant] must prove that the [Officers] (i) instituted criminal proceedings (ii) with malice and (iii) without probable cause, and (iv) that the proceedings were terminated in the [appellant]'s favor."  Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009); see Correllas v. Viveiros, 572 N.E.2d 7, 10 (Mass. 1991).

Viewing the record in the light most favorable to the appellant, he plainly has satisfied the first and fourth elements of the test.  He has failed, however, to establish either malice or a lack of probable cause.

Stripping away rhetorical flourishes, the appellant has offered no probative evidence to show that the Officers acted with malice when they effected his arrest:  he merely suggests that malice may be inferred under Massachusetts law when a police officer makes an arrest without probable cause.  See Chervin v. Travelers Ins. Co., 858 N.E.2d 746, 757 (Mass. 2006).  That is true as far as it goes — but it does not take the appellant very far.  Because we have found no genuine issue of material fact concerning the existence of probable cause, see supra Part II(A), there is no foundation from which an inference of malice could arise.  Accordingly, the appellant has failed as a matter of law

to make out a claim for malicious prosecution, and the district court did not err in entering summary judgment on this claim.

### D. **Civil Conspiracy Claim**.

We next address the appellant's claim that the Officers and the Municipal Officials engaged in a civil conspiracy to bring about his false arrest. We agree with the appellant that, in Massachusetts, a claimant can bring a civil conspiracy claim under a concerted action theory, "whereby liability is imposed upon one individual for the tort of another." Thomas v. Harrington, 909 F.3d 483, 490 (1st Cir. 2018) (quoting Kurker v. Hill, 689 N.E.2d 833, 836 (Mass. App. Ct. 1998)). But such a claim demands proof of an "underlying tort," and "[t]he conspiracy consists in agreeing to, or assisting in, [that] underlying tort." Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st. Cir. 2009).

Here, the appellant identifies false arrest as the underlying tort. He contends that the Officers and the Municipal Officials acted collectively to bring about his false arrest. In support, however, he notes only that the Officers conversed with the Municipal Officials regarding the legality of his slapdash blockade. Even if we assume that such a brief consultation could establish the concerted action required to prove the existence of a conspiracy — a matter on which we take no view — our finding that the Officers had probable cause to arrest the appellant, see supra Part II(A), dooms the appellant's insistence that his arrest

- 15 -

was unlawful. Without an underlying tort, there can be no actionable civil conspiracy. See Taylor, 576 F.3d at 35. We hold, therefore, that the district court did not err in entering summary judgment against the appellant on his civil conspiracy claim.

**E.  Intentional Infliction of Emotional Distress Claim.**

The appellant's final claim is for intentional infliction of emotional distress. In order to establish this claim, the appellant must show that the defendants, "by extreme and outrageous conduct and without privilege," subjected him to "severe emotional distress." Limone, 579 F.3d at 91 (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (Mass. 1976)). Specifically, the appellant had to show:

> (1) that the [defendants] intended to inflict emotional distress or that [they] knew or should have known that emotional distress was the likely result of [their] conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the [defendants] were the cause of the [appellant's] distress; and (4) that the emotional distress sustained by the [appellant] was severe and of a nature that no reasonable [person] could be expected to endure it.

Id. at 94 (quoting Agis, 355 N.E.2d at 318-19).

The appellant asserts that a reasonable jury could find that the Officers' decision to leave him in a holding cell without his cardiac medication amounted to extreme and outrageous conduct. Yet, the appellant's time in the holding cell was limited, and the

- 16 -

record contains no evidence that any cardiac incident occurred. To cinch the matter — aside from lamenting that the fallout from his arrest has left him "unable to earn a living on a piece of property that [he] purchased" — the appellant has adduced no evidence that he suffered any severe emotional distress as a result of what he self-servingly styles as his "ordeal." And during his deposition testimony, the appellant went to considerable lengths to debunk the possible utility of consulting a mental health professional for his alleged emotional upset.

To fill this void in the record, the appellant argues that "he should be permitted at trial to testify to his distress which is foresseable [sic]" from his arrest. This argument is unavailing. We have stated before — and today reaffirm — that "[b]rash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." Dow v. United Bhd. of Carpenters & Joiners of Am., 1 F.3d 56, 58 (1st Cir. 1993). Given the dearth of probative evidence, we conclude that the district court did not err in entering summary judgment against the appellant on his common-law claim for intentional infliction of emotional distress.

## III. CONCLUSION

We need go no further. By improvidently blocking a public way, the appellant managed to block his path to a successful prosecution of his claims against the Officers and the Municipal

- 17 -

Officials.  For the reasons elucidated above, the judgment of the district court is

**Affirmed**.