# United States Court of Appeals
## For the First Circuit

No. 19-1874

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY,

Defendant, Third-Party Plaintiff, Appellant,

v.

BECKMAN COULTER, INC.; SYSTEM ENGINEERING LABS, INC.; COULTER
REAGENTS, INC; SOLAR MAT OF PUERTO RICO COMPANY, INC.; PUERTO
RICO HOUSING DEPARTMENT; PREMIUM FRUIT COMPANY, INC.; PUERTO
RICO BEVERAGE, INC.; EIG AGUA PURA DE PUERTO RICO, INC.; JUAN
OROZCO LTD., INC.; CATPI, INC.; ORLE INTERNATIONAL CORPORATION;
MUNICIPALITY OF MAUNABO; SUNOCO CARIBBEAN, INC.; INSURER NUMBERS
ONE - TWELVE,

Third-Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McCafferty,[*] District Judge.

_____

[*] Of the District of New Hampshire, sitting by designation.

Juan Rafael González-Muñoz, with whom Juan J. Casillas-Ayala, Diana M. Batlle-Barasorda, and González Muñoz Law Offices, PSC were on brief, for appellant.

Ellen J. Durkee, Attorney, Environment and Natural Resources Division, United States Department of Justice, with whom Jonathan D. Brightbill, Principal Deputy Assistant Attorney General, Eric Grant, Deputy Assistant Attorney General, Anna T. Katselas, Mark A. Gallagher, Richard S. Greene, and Catherine Adams Fiske, Attorneys, Environment and Natural Resources Division, United States Department of Justice, and James Doyle and Henry Guzmán, Attorneys, Office of Regional Counsel, Region 2, United States Environmental Protection Agency, were on brief, for appellee.

November 17, 2021

**LYNCH**, **Circuit Judge**.  In September 2015, the United States brought a civil action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., against Puerto Rico Industrial Development Company ("PRIDCO"), appellant here, as a potentially responsible party ("PRP").  See Atl. Richfield Co. v. Christian, 140 S. Ct. 1335, 1352 (2020).  The United States sought to recover response costs associated with the ongoing cleanup of the Maunabo Area Groundwater Contamination Superfund Site (the "Site").  PRIDCO owns property on the Site which contains elevated levels of hazardous substances in the groundwater (the "Property").  These very same hazardous substances were found downgradient in a public drinking water well run by the Puerto Rico Aqueduct and Sewer Authority ("PRASA").

The district court entered three separate summary judgment opinions and orders against PRIDCO.  It first found the United States had established its prima facie case against PRIDCO for liability under CERCLA.  See United States v. P.R. Indus. Dev. Co. ("PRIDCO I"), 287 F. Supp. 3d 133, 141 (D.P.R 2017).  Next, the district court concluded that PRIDCO had failed to meet its burdens as to the innocent landowner defense set forth in 42 U.S.C. § 9607(b)(3) and the contiguous property owner exception provided in 42 U.S.C. § 9607(q).  See United States v. P.R. Indus. Dev. Co. ("PRIDCO II"), 368 F. Supp. 3d 326, 334-37 (D.P.R. 2019).

- 3 -

Thereafter, the court held that PRIDCO was liable to the United States for approximately $5.5 million in past response costs and would be liable in future litigation for additional response costs reasonably incurred by the United States. See United States v. P.R. Indus. Dev. Co. ("PRIDCO III"), 386 F. Supp. 3d 162, 167 (D.P.R. 2019). Although the contribution phase remained, in July 2019, the district court entered what it termed the "Amended Final Judgment" to permit the immediate appeal of these orders, citing to Federal Rules of Civil Procedure 54(b) and 58.

PRIDCO appeals from that judgment. PRIDCO's primary appellate argument is that the United States did not satisfy the release prong of § 107(a) of CERCLA, 42 U.S.C. § 9607(a), contending the United States could not succeed on that prong because the record did not show the hazardous substances were released from the surface of the Property.[1] PRIDCO also argues that the court erred in finding that PRIDCO had not met its burden to establish the contiguous property owner exception provided in 42 U.S.C. § 9607(q).[2] For these and other reasons, PRIDCO argues that the entry of summary judgment and award of response costs against it was error. We disagree, and affirm.

---

[1]     PRIDCO concedes that the other prongs have been met.

[2]     PRIDCO does not contest in this appeal the district court's determination that PRIDCO failed to meet its burden as to the innocent landowner defense. See 42 U.S.C. § 9607(b)(3).

- 4 -

I.

A. Legislative Background

Congress enacted CERCLA in 1980 following the discovery of a large, uncontrolled hazardous waste site in Niagara Falls, New York (Love Canal) and the associated pervasive health problems. Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 & n.5 (2d Cir. 2010) (citing S. Rep. No. 96-848, at 8-10 (1980)). CERCLA's purpose is "to address the serious environmental and health risks posed by industrial pollution." Atl. Richfield, 140 S. Ct. at 1345 (internal quotation marks omitted) (quoting Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 559, 602 (2009)). It is designed "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination." Id. (alteration in original) (quoting CTS Corp. v. Waldburger, 573 U.S. 1, 4 (2014)).

The statute has created a comprehensive mechanism for the Environmental Protection Agency ("EPA"), through the President, to investigate and respond to the release of hazardous substances, contaminants, and pollutants into the environment. See 42 U.S.C. § 9601 et seq.; Atl. Richfield, 140 S. Ct. at 1346 n.1. CERCLA instructs the EPA "to compile and annually revise a prioritized list of contaminated sites for cleanup, commonly known as Superfund sites." Atl. Richfield, 140 S. Ct. at 1346 (citing

- 5 -

42 U.S.C. § 9605). CERCLA empowers the EPA to itself undertake the necessary response measures as to a Superfund site, 42 U.S.C. § 9604(a), as the EPA did here. The EPA is also authorized to sue any PRP(s) to recover "all costs of removal or remedial action incurred by the United States . . . not inconsistent with the national contingency plan." Id. § 9607(a); see also id. §§ 9604-06, 9615. The statute has enumerated four broad classes of PRPs which "shall be liable" for these costs, including, as relevant here, "the owner and operator of a vessel or a facility . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." Id. § 9607(a).

CERCLA also governs the process by which the EPA selects its response plan. 42 U.S.C. § 9605; 40 C.F.R. § 300.400(a). It requires the agency, inter alia, to "establish an administrative record upon which [it] shall base the selection of a response action." 42 U.S.C. § 9613(k)(1). This record "shall be available to the public" during the selection process and its development shall involve the "participation of interested persons, including potentially responsible parties." Id. § 9613(k). The record shall also include the investigations and studies used by the EPA "to assess site conditions and evaluate alternatives to the extent necessary to select a remedy." 40 C.F.R. § 300.430(a)(2), (e)-(f); see 42 U.S.C. § 9613(k)(2)(B).

- 6 -

Before adopting a final remedy, the EPA is required to solicit and consider public comments on the proposal. 42 U.S.C. § 9617(a); 40 C.F.R. § 300.430(f)(ii). The EPA is then required to document its final remedy selection decision in a Record of Decision ("ROD") "for inclusion in the administrative record." 40 C.F.R. § 300.430(f)(5). The selected remedy shall be "protective of human health and the environment," "maintain protection over time," and "minimize untreated waste." Id. § 300.430(a)(1)(i).

Congress also sets strictures for judicial review of the EPA's actions. Judicial review of the response action(s) taken or ordered by the EPA "shall be limited to the administrative record." 42 U.S.C. § 9613(j)(1). And the EPA's selection of a response action shall be upheld unless, based on this record, it is deemed "arbitrary and capricious or otherwise not in accordance with law." Id. § 9613(j)(2); United States v. JG-24, Inc., 478 F.3d 28, 32 (1st Cir. 2007).

B. The Facts

PRIDCO is a Puerto Rican public corporation established in 1942 through Act. No. 188 of May 11, 1942, P.R. Laws Ann. tit. 23, § 273, as amended, with a principal purpose of promoting economic development in Puerto Rico through investment. PRIDCO owns industrial property and constructs facilities for lease or sale to qualified investors. PRIDCO has owned the Property, which is the subject of this action, since at least 1968.

- 7 -

The Property is located in the southeastern coastal area of Puerto Rico in the Municipality of Maunabo. The Property contains several buildings or "industrial structures," which have been leased to numerous tenants for decades, as early as 1969. The tenants have used these industrial structures, inter alia, to manufacture modular circuit prints, biomedical and reactive instruments, solar panels, laminated bedroom furniture, fruit juice, guitars, and prefabricated piping for frame walls.

Adjacent to the southern boundary (and downgradient) of the Property is Maunabo Well #1, one of the four groundwater supply wells operated by PRASA in the area. These wells provide drinking water to approximately 14,000 people living in and around Maunabo. Maunabo Well #1 was installed in 1961, retired in 1974, and returned to service in 2001. In the period between 2001 and 2004, tests conducted by PRASA detected elevated levels of volatile organic compounds ("VOCs") -- including tetrachloroethene ("PCE"), trichloroethene ("TCE"), and cis-1,2-dichloroethene ("cis-1,2-DCE") -- in the tap water of its customers from Well #1. Tests in 2002 revealed that the groundwater associated with the well contained the same compounds, with the concentration of PCE exceeding the federal maximum contaminant level. At all times relevant to this case, the EPA has classified these compounds as hazardous substances under CERCLA, and PRIDCO does not dispute the classification. See 40 C.F.R. § 302.4.

The EPA commenced a preliminary investigation of the Site in 2005, and its test results confirmed those of PRASA. The EPA began investigating PRIDCO, among others, as a potential source of the contamination. The agency added the "Maunabo Area Ground Water Contamination Superfund Site" to the National Priorities List in 2006.[3] 71 Fed. Reg. 56399, 56403 (Sept. 27, 2006).

Based on extensive groundwater testing, the EPA concluded that the Site contained three distinct plumes of contaminated groundwater. The EPA identified one contaminated plume as the "cis-1,2-DCE plume" (or the "PRIDCO Plume"), which is present under the surface of PRIDCO's property and extends downgradient towards Maunabo Well #1. The data shows that the PRIDCO Plume contains high concentrations of TCE and cis-1,2-DCE, a degradation product of TCE. The EPA reports show there are no test results which have detected these two contaminants on the Property in the soil directly above the PRIDCO Plume. Those same reports state that "[t]he configuration of the cis-1,2-DCE plume indicates that a release of Site-related contaminants . . . occurred at or near the [PRIDCO] property." That is where cis-1,2-DCE "exceed[ed] the groundwater screening criteria." The parties agree the contamination is not naturally occurring.

---

[3] The National Priorities List is a compilation of the most contaminated sites in the United States. See 40 C.F.R. § 300.425.

In 2012, the EPA completed its Final Remedial Investigation/Feasibility Study Report, solicited and considered public comments on a proposed response plan, and held a public meeting on the matter. PRIDCO participated in the comment period by contesting its designation as a PRP. PRIDCO otherwise did not challenge the proposed response plan. The EPA rejected PRIDCO's concerns because "site related contamination was detected in the groundwater on the [PRIDCO] property and immediately downgradient [thereof]," which follows the direction the groundwater flows.

After studying the environmental conditions at the Site, evaluating various cleanup options, and considering the public comments, the EPA issued the ROD in 2012. The EPA concluded that the "site-related groundwater data contamination . . . does pose a significant threat to human health or the environment; therefore, remediation is necessary." The EPA conducted a comparative analysis of alternative remedies, which it summarized in the ROD. As to the remedy for the PRIDCO Plume, the EPA evaluated "monitored natural attenuation" and "air sparging/soil vapor extrusion" remedies, among others, based on the nine criteria for evaluation set forth in 40 C.F.R. § 300.430(e)(9). The EPA describes monitored natural attenuation as routine monitoring of biodegradation in the plume used to assess the rate at which contamination levels are decreasing naturally. The agency characterizes the air sparging remedy as an active treatment which

would accelerate the reduction of the PRIDCO Plume contaminant concentrations to protect the area's drinking water supply.

The ROD selected the air sparging remedy for the PRIDCO Plume, noting that the remedy would "serve to reduce the concentration of contaminants in groundwater being drawn into the Maunabo [Well] #1, providing protection of human health." The ROD further reported that the air sparging remedy would "provide the greatest permanent mass reduction of contamination within the cis-1,2-DCE plume within the shortest period of time." It rejected the remedy of monitored natural attenuation, explaining that, "[i]f natural attenuation does not occur within a reasonable time frame, there is the potential that the concentrations [of contaminants would increase and] enter the Maunabo [Well] #1 in the future, potentially impacting human health." The EPA also noted that "the total volume of contaminated groundwater . . . might increase if natural attenuation processes are unable to contain the plume."

At the time the judgment appealed from was entered, the air sparging system had not been constructed.[4]

---

[4] The EPA has since completed construction of the air sparging system and is now operating the remedy.

C. The Procedural History

In 2015, the United States initiated this action against PRIDCO, seeking reimbursement for the response costs incurred by the EPA in connection with the PRIDCO Plume.  PRIDCO filed a third-party complaint against other PRPs, namely, some of the tenants that occupied and operated the Property during the relevant time period and their insurers.[5]  On the United States' motion, the trial proceedings were then trifurcated into liability, cost, and contribution phases.

The United States moved for summary judgment as to liability in July 2017 ("Phase I motion").  PRIDCO opposed the motion and requested the deferral of its consideration under Federal Rule of Civil Procedure 56(d) pending further expert analysis of the contested source of the contamination found at the Property.  In a 43-page opinion and order entered in December 2017, the district court granted in part and denied in part the Phase I motion, and denied PRIDCO's request to defer the motion's resolution.  PRIDCO I, 287 F. Supp. 3d at 137.  The court held that the United States had met its burden, on the undisputed facts, to establish PRIDCO's prima facie liability.  Id. at 141, 145.  It also held that additional expert analysis on this issue was unnecessary.  Id. at 139.  The court reasoned that "identifying

_____

[5]     None of these parties have participated in this appeal.

- 12 -

the source of contamination is immaterial to the prima facie liability analysis" when, as here, unnatural hazardous substances are found on the defendant's property. Id. at 139; see id. at 144. Subject to a few narrow exceptions, the court explained, CERCLA imposes strict liability on any property owner whose groundwater is contaminated, regardless of fault. Id. at 144. The court added that CERCLA places the burden on the property owner to show a lack of causation as an affirmative defense or exception. See id. at 147-49.

In the same opinion, the district court denied the United States' Phase I motion as to PRIDCO's innocent landowner defense and contiguous property owner exception. Id. at 147-49. The court permitted the United States to renew this challenge to the defense and exception after the completion of discovery. Id. at 148-49.

Following discovery, PRIDCO and the United States filed cross-motions for summary judgment as to the innocent landowner defense and contiguous property owner exception. PRIDCO II, 368 F. Supp. 3d at 329-30, 333. The United States also sought summary judgment as to the amount of response costs owed by PRIDCO ("Phase II motion") and moved to limit the scope of judicial review of the remedy selected. Id. at 333. In another opinion and order, the district court granted summary judgment in favor of the United States for each defense and exception. Id. at 334-35. The court concluded that PRIDCO fell short of its burden to establish as a

triable issue that an unrelated third party was the sole cause of the contamination.  Id. at 335-36.  The court denied without prejudice the United States' motion to limit the scope of judicial review and ordered the United States to provide further information on the issue of costs.  Id. at 343.

A few months later, the United States filed a Supplemental Report clarifying its cost calculation.  In a third opinion and order, the district court granted the United States' Phase II motion.  PRIDCO III, 386 F. Supp. 3d at 165.  The court noted that the cost calculation for the motion represented only past costs because the EPA had yet to commence the selected remedy for the Site, but that PRIDCO would be liable for all future costs, as well.  Id. at 167.  Reviewing the administrative record, the court also concluded that the EPA's removal and remedial actions were consistent with the national contingency plan.  Id. at 169-70.

On July 17, 2020, the district court entered an amended final judgment, awarding the United States approximately $5.5 million in past response costs and declaring the United States' entitlement to future response costs consistent with the national contingency plan.[6]  PRIDCO appeals from that judgment.  Phase III

---

[6]     The judgment was not docketed until July 23, 2019.

of the litigation -- that is, the contribution phase -- has been stayed pending appeal.

## II.

Orders granting summary judgment are reviewed de novo, "drawing all reasonable inferences in favor of the non-moving party." Pac. Indem. Co. v. Deming, 828 F.3d 19, 23 (1st Cir. 2016) (internal citation omitted).  Those inferences are drawn based "on the record as it stands, not on litigants' visions of what the facts might some day reveal." Finamore v. Miglionico, 15 F.4th 52, 58 (1st Cir. 2021) (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Arabian Support & Servs. Co. v. Textron Sys. Corp., 943 F.3d 42, 47 (1st Cir. 2019).  A genuine issue exists if "a reasonable jury could resolve the point in favor of the nonmoving party."  Finamore, 15 F.4th at 58 (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). A fact is material if "it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets." Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996)).

Review of questions concerning the interpretation of CERCLA is de novo "with appropriate deference given to agency

- 15 -

interpretations." JG-24, 478 F.3d at 32. A court considering issues raised as to the EPA's actions "shall uphold the [EPA's] decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2).

A. Prima Facie Liability

PRIDCO first challenges the district court's entry of summary judgment on prima facie liability in favor of the United States. PRIDCO argues that there remain genuine issues regarding the United States' prima facie case -- specifically whether there was a "release" of hazardous substance from the Property -- thereby precluding summary judgment. We disagree.

CERCLA states that: "the owner and operator of a . . . facility . . . from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable . . . ." 42 U.S.C. § 9607(a); see Dedham Water, 889 F.2d at 1151 n.4 (explaining that the phrase "from which there is a release, or threatened release" modifies all four subparagraphs in section 9607(a)). Subject only to narrow affirmative defenses or exceptions set forth in 42 U.S.C. § 9607(b), (q), the statute imposes strict liability on the owner of a facility, "without reference to whether [the owner] caused or contributed to the threat of release." Id. at 1152-53; see also

- 16 -

<u>Acushnet Co.</u> v. <u>Mohasco Corp.</u>, 191 F.3d 69, 74 (1st Cir. 1999) ("By and large, a person who falls within one of the four categories defined in § 9607(a) is exposed to CERCLA liability."); <u>Niagara Mohawk Power</u>, 596 F.3d at 120 ("[P]roperty owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there.").

To establish a prima facie case against an owner under § 107(a) of CERCLA, the United States has the burden to prove only that the Property constitutes a "facility" as defined by 42 U.S.C. § 9601(9); PRIDCO owns the facility, <u>id.</u> §§ 9601(20), 9607(a); "there was a release, or threatened release . . . of a hazardous substance" from the facility, <u>id.</u> §§ 9601(14), (22), 9607(a); and, as a result, the United States incurred response costs "not inconsistent with the national contingency plan," <u>id.</u> §§ 9601(23)-(25), 9607(a). Because PRIDCO owns the facility at issue, the United States can establish PRIDCO's liability based on a "release" of hazardous substances from that facility. <u>See</u> 42 U.S.C. § 9607(a). By contrast, CERCLA requires proof of a "disposal" to hold the other three classes of PRPs (i.e., past owners and operators, arrangers, and transporters) liable. <u>See</u> <u>id.</u>

CERCLA defines a "release" as "<u>any</u> spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing <u>into the environment</u>." 42 U.S.C. § 9601(22) (emphasis added). A "disposal," which is

- 17 -

defined more narrowly by the Solid Waste Disposal Act of 1965, is "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water . . ." 42 U.S.C. §§ 6903(3), 9601(29).

Unlike "disposal," courts have construed the definition of "release" broadly, see Dedham Water, 889 F.2d at 1152, and to include passive migration into the environment, see United States v. CDMG Realty Co., 96 F.3d 706, 715 (3d Cir. 1996) (concluding that Congress used the term "leaching" in its definition of "release" but not of "disposal" to include passive migration only for the former); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 358 (2d Cir. 1997) (same). The term "environment" includes "ground water" and "drinking water supply." 42 U.S.C. § 9601(8)(B).

As the owner of the Property, PRIDCO is clearly prima facie liable due to the undisputed presence of hazardous substances in its "ground water." 42 U.S.C. § 9601(8). On these facts, evidence of soil contamination is not required. The undisputed evidence is that the groundwater on PRIDCO's property (and within its "facility," see PRIDCO I, 287 F. Supp. 3d at 142) is contaminated with at least two hazardous substances: TCE and cis-1,2-DCE. 40 C.F.R. § 302.4. This contaminated groundwater is included within the statutory definition of "environment," 42 U.S.C. § 9601(8), in addition to constituting part of PRIDCO's

- 18 -

"facility" in this case. Because groundwater flows and is not static, the hazardous substances have migrated "from" the groundwater in the facility, to the groundwater in the environment, constituting a release.[7]

If that were not enough, the undisputed existence of a contaminated groundwater plume under PRIDCO's property that has migrated towards and been "intercept[ed]" by the Maunabo Well #1 drinking water supply clearly establishes the release element. The undisputed evidence that the PRIDCO Plume extends to the downgradient Maunabo Well #1 drinking water supply shows further migration into the environment. Tests conducted by PRASA in 2002 discovered that the groundwater associated with the well contained TCE and cis-1,2-DCE, the same hazardous substances detected in the PRIDCO Plume. Additional tests detected these contaminants in the tap water of PRASA's customers between 2001 and 2004.

PRIDCO's arguments to the contrary lack merit. PRIDCO focuses on the United States' allegation that the release occurred "at" PRIDCO's property, rather than "from" it as stated by the statute. This argument is misplaced. It is the statute that governs here, not the language used by the United States in its

---

[7]    Although PRIDCO asserts this argument is waived because it was not raised in the district court, "[w]e are at liberty to affirm a district court's judgment on any ground made manifest by the record, whether or not that particular ground was raised below." United States v. George, 886 F.3d 31, 39 (1st Cir. 2018).

- 19 -

pleadings.  As just explained, the undisputed evidence satisfies the "release" element as provided in the statute.

PRIDCO further argues that the use of the word "from" in § 107(a) of CERCLA requires the United States to identify the source of the contamination to establish a prima facie release.  That is also incorrect.[8]  Nothing in the statute indicates the United States has this burden of proof.  See Dedham Water, 889 F.2d at 1152; cf. Cnty. of Maui v. Hawaii Wildlife Fund, 140 S. Ct. 1462, 1473 (2020) (explaining, in the context of groundwater pollution under the Clean Water Act, that "the specific meaning of the word 'from' necessarily draws its meaning from context").  Section 107(a) sets forth the four elements the United States must prove to establish its prima facie case.  The United States has

---

[8]    Because the United States was not required to prove the source of contamination at the liability phase, the district court did not abuse its discretion by denying PRIDCO's request under Fed. R. Civ. P. 56(d) to defer the resolution of the United States' Phase I summary judgment motion until the source was identified.  PRIDCO I, 287 F. Supp. 3d at 139; see Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014) ("We reverse denials of Rule 56(d) motions only upon a clear showing of manifest injustice" where, at the least, the party opposing summary judgment proves likely "to garner useful evidence from supplemental discovery." (internal quotation marks and citations omitted)).  Further, by the time Phase I summary judgment was entered, the case had been pending for more than two years and the investigation of the Site had been proceeding for nearly a decade.  PRIDCO provides no reason why it did not, or could not, conduct its own investigation of the Site to determine the source of contamination.

shown all four elements.  Nothing in the provision's text requires the United States also to identify the contaminant's source.

Further, nothing in § 107(a) of CERCLA limits liability only to those who own facilities from which the contamination originated.  Rather, CERCLA holds strictly liable any owner of a "facility" "from which there is a release, or threatened release . . . ."  42 U.S.C. § 9607(a).  The statute extends liability wherever a hazardous substance both has "come to be located" on a property, id. § 9601(9) (defining "facility"), and has threatened to escape into the environment, see id. § 9601(22) (defining "release").  As the Second Circuit has recognized, under CERCLA, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there."  Niagara Mohawk Power, 596 F.3d at 120.[9]

The legislative history further supports this position. As we observed in Dedham Water Co. v. Cumberland Farms Dairy, Inc.,

_____

[9] PRIDCO's cite to the "Final Policy Toward Owners of Property Containing Contaminated Aquifers" memorandum issued by the EPA in 1995 does not help its claim.  60 Fed. Reg. 34790 (July 3, 1995).  That policy has since largely been codified in the statute as the contiguous property owner exception.  See 42 U.S.C. § 9607(q); S. Rep. No. 107-2, at 9-10 (2001) (stating that the statutory contiguous property exception "is similar to EPA guidance" of 1995 which "clarifies that EPA will not bring enforcement actions against owners of property that has been impacted by contaminated groundwater migrating from a neighboring facility").  We analyze this statutory exception infra, mentioning it here only to note that it does not relieve PRIDCO of prima facie liability.

that history shows that the original CERCLA House bill required a causal connection between a PRP and a release, but that "this causation language was deleted from the final bill that was passed." 889 F.2d at 1152-53 (citing H.R. Rep. No. 96-1016, at 33 (1980), reprinted in 1980 U.S.C.C.A.N. 6119, 6136-37; and H.R. 7020, 96th Cong. 2d Sess. § 3071(a)(1)(C) (1980), 126 Cong. Rec. 26, 779, reprinted in 2 A Legislative History of CERCLA, at 39 (1983)); see 42 U.S.C. § 9607(a). "[T]he statute that was passed imposed liability on classes of persons, i.e. owners, former owners, generators, or transporters, without reference to whether they caused or contributed to the threat of release." Dedham Water, 889 F.2d at 1153 (internal citation omitted). Later legislative history also notes that, "[u]nder CERCLA, [landowners] can be held liable for the entire cost of cleanup, even if . . . innocent," in the sense that they are not the source of contamination. S. Rep. No. 107-2, at 2 (2001). This history supports the district court's conclusion that "identifying the source of contamination is immaterial to the prima facie liability analysis." PRIDCO I, 287 F. Supp. 3d at 139.

### B. Contiguous Property Owner Exception

There was no error in the district court's holding that, on the undisputed facts, PRIDCO had not met its burden to show the contiguous property owner exception. PRIDCO bore the burden to establish the exception "by a preponderance of the evidence." 42

U.S.C. § 9607(q)(1)(B); <u>Atl. Richfield</u>, 140 S. Ct. at 1356. This burden requires PRIDCO to satisfy eight statutory requirements, of which we highlight the following:

> (A) [The person] owns real property that is contiguous to or otherwise similarly situated with respect to, and that is or may be contaminated by a release or threatened release of hazardous substance from, real property that is not owned by that person . . .
>> (i) the person did not cause, contribute, or consent to the release or threatened release; [and]
>> (ii) the person is not--
>>> (I) potentially liable, or affiliated with any other person that is potentially liable, for response costs at a facility through any direct or indirect familial relationship or any contractual, corporate, or financial relationship (other than contractual, corporate, or financial relationship that is created by a contract for the sale of goods or services); or
>>> (II) the result of a reorganization of a business entity that was potentially liable.[10]

---

[10] The other criteria are as follows:

> (iii) the person takes reasonable steps to-- (I) stop any continuing release; (II) prevent any threatened future release; and (III) prevent or limit human, environmental, or natural resource exposure to any hazardous substance released on or from property owned by that person; (iv) the person provides full cooperation, assistance, and access to persons that are authorized to conduct response actions or natural resource restoration at the vessel or facility from which there has been a release or threatened release (including the cooperation and access necessary for the installation, integrity, operation, and maintenance of any complete or partial

- 23 -

§ 9607(q)(1)(A). As the United States argues, PRIDCO is required to establish each requirement. PRIDCO has not done so.

PRIDCO has failed to establish a genuine dispute as to whether it is affiliated with whoever caused the contamination. PRIDCO's expert witness, Eng. Raúl Colón Vicenty, opines that, given the absence of detected contaminants in the soil at the Property, it is not "likely" that PRIDCO caused or contributed to

response action or natural resource restoration at the vessel or facility); (v) the person -- (I) is in compliance with any land use restrictions established or relied on in connection with the response action at the facility; and (II) does not impede the effectiveness or integrity of any institutional control employed in connection with a response action; (vi) the person is in compliance with any request for information or administrative subpoena issued by the President under this chapter; (vii) the person provides all legally required notices with respect to the discovery or release of any hazardous substances at the facility; and (viii) at the time at which the person acquired the property, the person--(I) conducted all appropriate inquiry within the meaning of section 9601(35)(B) of this title with respect to the property; and (II) did not know or have reason to know that the property was or could be contaminated by a release or threatened release of one or more hazardous substances from other real property not owned or operated by the person.

42 U.S.C. § 9607(q)(1)(A). The statute also specifies certain actions that a contiguous property owner need not take where the hazardous substance migrates solely through the groundwater. See id. § 9607(q)(1)(D).

the contamination found in the groundwater. We assume, without deciding, that this expert opinion creates a genuine dispute of material fact as to whether PRIDCO "cause[d]" or "contribute[d]" to the release. Id. § 9607(q)(1)(A)(ii).

Regardless, PRIDCO's assertion of the contiguous property exception fails for the separate reason that it has not shown an ability to prove it is unaffiliated with any other PRP, as required by the second requirement, 42 U.S.C. § 9607(q)(1)(A)(ii). PRIDCO contends that it does not own the neighboring property from which PRIDCO asserts the contamination originated. But PRIDCO has failed to identify the actual cause of the release. PRIDCO has not identified what person or entity disposed of the hazardous substances on that property. Instead, PRIDCO's expert merely opines that it was "possible" that dumping occurred "at or nearby" the neighboring property. When asked who dumped the hazardous substances, the expert replied: "Who knows. I don't know." We cannot say that PRIDCO is unaffiliated with the responsible party without knowing with whom or what PRIDCO is to be deemed unaffiliated. Because PRIDCO bears the burden to disprove its association with the responsible party by a preponderance of the evidence, id. § 9607(q)(1)(B), and has failed to create a triable issue on the matter, the district court's conclusion was correct.

C. The Selected Remedy Was Not Arbitrary and Capricious

PRIDCO finally contends that the district court abused its discretion by "de facto" granting the United States' motion to limit the scope of review by failing to consider at Phase II materials falling outside of the EPA's administrative record. PRIDCO argues that, due to that "de facto" grant, it was prevented from challenging the EPA's selection of the air sparging remedy which PRIDCO asserts was arbitrary and capricious. PRIDCO again misrepresents the record. There was no claimed "de facto" grant.

Under CERCLA, a responsible party is liable for "all costs of removal or remedial action incurred by the United States . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). Consistency of the EPA's response actions with the national contingency plan is presumed. City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 91 (1st Cir. 2008). "[J]udicial review of any issues concerning the adequacy of any response action taken or ordered by the [EPA] shall be limited to the administrative record." 42 U.S.C. § 9613(j)(1).

i. The Court's Review of the Remedy Selection Was Properly Limited to the Administrative Record

PRIDCO first argues the district court abused its discretion at Phase II by "de facto" granting the United States' motion to limit the scope of review of the remedy selection. The United States specifically sought to exclude the opinion of

PRIDCO's expert, Dr. Konrad J. Banaszak, as to the air sparging remedy; the opinion was submitted six years after the remedy was selected and the ROD was completed. On March 25, 2019, the district court denied the United States' motion without prejudice. See PRIDCO II, 368 F. Supp. 3d at 343. The United States never renewed the motion and the district court did not thereafter expressly grant it. PRIDCO argues the motion was "de facto" granted in the court's May 2019 summary judgment opinion and order because, in that opinion, the court did not consider materials falling outside the EPA's administrative record. See PRIDCO III, 386 F. Supp. 3d at 169-70. Relevant here, the district court stated that, generally, judicial review of the agency's response action "is limited to the administrative record." Id. (citing 42 U.S.C. § 9613(j)).

PRIDCO's argument is based on the contention that the court was obligated on these facts to go outside that record to review the selected removal and remedial actions taken by the EPA. Ordinarily, courts do not do so and this case presented no occasion to diverge from that standard practice. 42 U.S.C. § 9613(j)(1); id. § 9613(j)(2) ("In considering objections raised in any judicial action under this chapter, the court shall uphold the [EPA's] decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious." (emphasis added)); see

- 27 -

also <u>Liston</u> v. <u>Unum Corp. Officer Severance Plan</u>, 330 F.3d 19, 23 (1st Cir. 2003) (precluding supplementation of an administrative record, reasoning "how could an administrator act unreasonably by ignoring information never presented to it?"). The EPA in this case had compiled an administrative record that was made available to the public and contained the agency's studies, investigations, review of public comments, and comparative analysis of alternative response actions.

PRIDCO challenges this conclusion, arguing that this case warrants the review of extra-record materials as to remedy selection because post-ROD studies were considered at the liability phase. This is incorrect. Admissibility at the liability stage is governed by the Federal Rules of Evidence. Challenges to the EPA's selected response action(s) are subject to § 113(j) of CERCLA. Subject to narrow exceptions not presented here, § 113(j)(1) limits judicial review of the EPA's response action(s) to the administrative record. <u>See</u> 42 U.S.C. § 9613(j)(1); <u>JG-24</u>, 478 F.3d at 34 ("Normally, we do not allow supplementation of the administrative record unless the proponent points to specific evidence that the agency acted in bad faith."); <u>Olsen</u> v. <u>United States</u>, 414 F.3d 144, 155-56 (1st Cir. 2005) (stating a limited exception for "failure to explain administrative action as to frustrate effective judicial review." (internal quotation marks and citation omitted)). The district

court did not abuse its discretion by adhering to the express limits of review set forth in § 113(j). See JG-24, 478 F.3d at 33-34 ("Under CERCLA, judicial review normally is limited to the administrative record as it existed at the time of the challenged agency action.").

### ii. The EPA Adequately Considered Alternative Remedies

PRIDCO argues the EPA's selection of the air sparging remedy was arbitrary and capricious because there was inadequate consideration of alternative remedies in the ROD. PRIDCO prefers the less expensive remedy of monitored natural attenuation.

PRIDCO again misrepresents the record. The ROD contains a six-page discussion of the EPA's various alternatives. That discussion includes a careful comparative analysis between the air sparging remedy and monitored natural attenuation, among others, to determine which remedy would best "protect human health and the environment." See 40 C.F.R. § 300.430(a)(1)(i) ("The national goal of the remedy selection process is to select remedies that are protective of human health and the environment, that maintain protection over time, and that minimize untreated waste."). The EPA acknowledged that concentrations of the contaminants were, as PRIDCO offers, decreasing naturally, and that monitored natural attenuation would be cheaper to implement. The EPA nonetheless rejected monitored natural attenuation as the sole remedy for the

PRIDCO Plume because it found the process insufficiently protective of human health. The EPA determined that the process was too slow to protect drinking water supplies -- namely, Maunabo Well #1 -- within a reasonable timeframe. The EPA also warned that "the total volume of contaminated groundwater . . . might increase if natural attenuation processes are unable to contain the plume."

Based on these findings, the EPA reasonably selected the active air sparging remedy instead to "accelerat[e] what nature would do," "promote the degradation in less time," and "remove the contaminants . . . permanently." This decision was neither arbitrary nor capricious. See United States v. Ne. Pharm. & Chem. Co., 810 F.2d 726, 748 (8th Cir. 1986) ("Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA.").

III.

The district court's holdings that the United States had made out its prima facie case against PRIDCO for liability; that PRIDCO had failed to meet its burden as to the contiguous property owner exception; and that the United States was entitled to recover $5,491,278.78 in response costs through February 28, 2018, plus post-judgment interest, are affirmed. Costs are awarded to the United States.